**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | | |
|---|---|---|
| **Angela Salyer,** | ) | **Civil Action No.:** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **v.** | ) | |
| | ) | |
| **Synchrony Bank,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## <u>COMPLAINT</u>

1.     This is an action brought by Plaintiff, Angela Salyer, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*, (hereinafter "FCRA"), the Truth in Lending Act, 15 U.S.C. §1601, *et seq*, (hereinafter "TILA"), the South Carolina Consumer Protection Code, S.C. Code Ann. §37-5-108, *et seq.*, and South Carolina common law as set forth herein.

2.     The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3.     Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in

a credit report." S. Rep. No. 91-517 (1969).

4.      To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681c and 1681e, which are two of the cornerstone provisions of the FCRA.

5.      One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

6.      The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as *deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

## **JURISDICTION AND VENUE**

7.      This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C.

2

§1681p, the Truth-in-Lending Act, 15 U.S.C. §1640(e), and 28 U.S.C. §1331 and §1332.

8.      Venue is proper in the Florence Division because the Plaintiff resides in Horry County and the Defendant transacted business in this division.

## PARTIES

9.      Plaintiff, Angela Salyer, is a resident and citizen of the State of South Carolina, Horry County, and is over the age of twenty-one (21) years.  Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10.     Defendant Synchrony Bank ("Synchrony"), whose corporate status is unknown to Plaintiff, may be served with process by way of its CEO, Brian D. Doubles, at its corporate headquarters, 777 Long Ridge Rd., Stamford. CT 06902.  At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

## FACTUAL ALLEGATIONS

11.     Beginning by at least January, 2020 and continuing throughout 2021 and into 2022, Plaintiff has been, and continues to be, the victim of such extensive identity theft that it has compromised all parts of her life, including her credit accounts, personal information, and e-mail information.  The invasion into Plaintiff's life has been of such a nature as to require her to purchase a P.O. Box so as to protect her physical mail.

12.     After becoming the victim of identity theft, Plaintiff was essentially locked out of all of her accounts. This includes multiple accounts with Defendant: a Synchrony Amazon account with account number ending 6620 ("Amazon account"), a Synchrony Briggs & Stratton account with account number ending 0215 ("Briggs & Stratton account"), a

3

Synchrony Care Credit account with account number ending 8822 ("Care Credit account"), a Synchrony PPC Paypal account with account number ending 0579 ("PPC account"), a Synchrony Lowe's account with account number ending 1626 ("Lowe's account"), and a Synchrony Sam's Club account with account number ending 4678 ("Sam's Club account").

13.     Once Plaintiff became aware that she had been the victim of fraud, she contacted Defendant on multiple occasions. These communications consisted of, but were not necessarily limited to, telephone calls, letters, and disputes through the credit reporting agencies. Plaintiff also tried to access the accounts online but was unable to do so as the identity thief had changed the accounts' access information.

14.     On or about March 17, 2021, Plaintiff sent a dispute letter to Trans Union in which she disputed the Lowe's account and the PPC account and stated that both had been fraudulently used without her permission. Plaintiff likewise disputed inquiries by Synchrony HSN and Synchrony Zulily. With her dispute, Plaintiff included her name, address, date of birth, and Social Security number. Trans Union forwarded this dispute to Defendant.

15.     On or about March 17, 2021, Plaintiff also sent a dispute letter to Experian in which she disputed the Lowe's account and the PPC account and stated that these two accounts had been fraudulently used without her permission. Plaintiff also disputed inquiries by Synchrony Bank JCPenney and Synchrony Bank Ebay. With her dispute, Plaintiff included her name, address, date of birth, and Social Security number. Experian forward this dispute to Defendant.

16.     On or about March 17, 2021, Plaintiff sent a dispute letter to Equifax in which she

disputed the Lowe's account and the PPC account and stated that these two accounts had been fraudulently used without her permission. Plaintiff also disputed inquiries by Synchrony Bank JCPenney and Synchrony Bank Ebay. With her dispute, Plaintiff included her name, address, date of birth, and Social Security number. Equifax forward this dispute to Defendant.

17.     On or about March 18, 2021, Plaintiff received a call from Defendant relating to the PPC account in which Defendant stated that the PPC account was maxed out and that Plaintiff needed to make a payment. Plaintiff informed the caller that she had been the victim of identity theft and that a third party had fraudulently used the PPC account.

18.     Following the March 18, 2021 call, Defendant emailed Plaintiff under the name "PayPal billing" and stated that the last charge on the PPC account was $498.95 sent to Bit-Trade Exchange. Plaintiff neither made the charge nor did she purchase cryptocurrency. Accordingly, Plaintiff sent Defendant a letter notifying it that a third party had fraudulently used the PPC account.

19.     On or about March 31, 2021, Plaintiff returned home to find that her tractor was gone. Plaintiff believed Defendant had repossessed her tractor and, therefore, Plaintiff tried calling Defendant directly but was not able to speak to anyone because she could not correctly answer the verification questions as a third party had changed her access information. Defendant never provided Plaintiff any information regarding the tractor, whether said tractor had been repossessed, nor did Defendant provide Plaintiff a notice of right to cure prior to repossessing Plaintiff's tractor.

20.     On or about March 31, 2021, Plaintiff sent Defendant a letter stating that a third

party had fraudulently changed her verification information. Plaintiff requested Defendant call her so she could have access to her accounts.

21.    On or about April 7, 2021, Plaintiff received a Fraud Investigation Form from Defendant relating to the PPC account. Plaintiff completed same and returned same to Defendant.

22.    On or about April 27, 2021, Plaintiff received correspondence from Defendant relating to her Briggs & Stratton account. Defendant stated that it was lowering Plaintiff's credit limit to $8,290.00 due to "Too Many Revolving Accounts with High Balance Compared to Credit Limit",  "Not Enough Balance Paid Down Over Time on Real Estate Secured Loans", "Delinquent or Derogatory Status on Real Estate Secured Loan is too Recent", and "Too Many Bankcards with High Balance Compared to Credit Limit". Defendant stated that it had accessed and relied upon Plaintiff's Trans Union credit report in making its determination to lower Plaintiff's credit limit. Defendant did not say anything about the repossession or give Plaintiff any information relating to redemption of the wrongfully repossessed equipment.

23.    On or about April 27, 2021, Plaintiff received the results of Defendant's alleged investigation into the dispute Plaintiff mailed to Trans Union on March 17, 2021. Defendant updated the Lowe's Account to being current with a 30- and 60- day late, and updated the PPC account to Current, Paid or Paying as Agreed without any late payments.

24.    On or about May 13, 2021, Plaintiff received a call from an individual that Defendant hired to repossess a building Plaintiff used for her pigs. Defendant did not send Plaintiff a notice of right to cure relating to the building.

25.    On or about May 24, 2021, Plaintiff received a Notice of Right to Cure relating to the Sam's Club account.

26.    On or about June 10, 2021, Plaintiff sent a second dispute letter to Trans Union in which she again disputed the Lowe's account. Plaintiff stated that Defendant should remove the late payment notation from her credit report as she had attempted to make payments on the account and had been locked out by Defendant due to ongoing fraud. Plaintiff additionally disputed inquiries by Synchrony HSN and Synchrony Zulily. Plaintiff again included in her dispute her name, address, date of birth, and Social Security number. Trans Union received Plaintiff's dispute on June 25, 2021 and forwarded Plaintiff's dispute to Defendant.

27.    On or about June 10, 2021, Plaintiff sent Experian a second letter again informing Experian that she had been the victim of identity theft.  Plaintiff disputed Defendant's reporting of the Lowe's account and the PPC account. Plaintiff also disputed inquiries by Synchrony JCPenney and Synchrony Ebay. Plaintiff again provided Experian with her name, address, date of birth, and Social Security number. Experian received Plaintiff's dispute on June 15, 2021 and forwarded Plaintiff's dispute to Defendant.

28.    On or about June 10, 2021, Plaintiff sent Equifax a second letter informing Equifax that she had been the victim of identity theft. Plaintiff disputed Defendant's reporting of the Lowe's account and the PPC account. Plaintiff also disputed inquiries by Synchrony JCPenney and Synchrony Ebay. Plaintiff again provided Equifax with her name, address, date of birth, and Social Security number. Equifax received Plaintiff's dispute on June 15, 2021 and forwarded Plaintiff's dispute to Defendant.

29.     On or about June 10, 2021, Plaintiff also sent a dispute letter directly to Defendant concerning the fraudulent use of the Lowe's account and the PPC account. Plaintiff requested that Defendant provide her with copies of all statements generated over the last 18 months relating to those two accounts and to stop all collection activities on those accounts until an investigation was conducted, and that Plaintiff be provided with a point of contact who could help in resolving these issues. With her dispute, Plaintiff included her name, address, Social Security number, and date of birth.

30.     On or about June 14, 2021, Plaintiff received a Notice of Right to Cure from Defendant concerning an account ending in 2347.

31.     On or about June 23, 2021, Plaintiff sent Defendant a check for $771.00 to try to stop repossession of her building.

32.     On or about June 29, 2021, Plaintiff received correspondence from Defendant concerning the Lowe's account. Defendant stated that it had closed the Lowe's account and notified the credit bureaus to remove the Lowe's account from Plaintiff's credit file. Defendant stated that it would send Plaintiff a letter when Defendant resolved Plaintiff's fraud claim, which might take up to 60 days.

33.     On or about July 5, 2021, Plaintiff received correspondence from Defendant concerning the PPC account. Defendant stated that it had reviewed the account in response to Plaintiff's "credit bureau reporting dispute" and the review indicated that Defendant was correctly reporting the PPC account. Defendant stated that the account was reported lost or stolen on April 2, 2021.

34.     On or about July 10, 2021, Plaintiff received the results of Defendant's alleged

investigation of her June 10, 2021 dispute to Equifax. Defendant continued to negatively report the PPC account and the Lowe's account to Plaintiff's Equifax credit report. Defendant was also reporting the Amazon account, the Sam's Club account, the Care Credit account, and the Briggs & Stratton account negatively to Plaintiff's Equifax credit report.

35.    Plaintiff did not receive results of any investigation by Defendant into her second dispute mailed to Experian.

36.    Plaintiff did not receive a response to her June 10, 2021 letter to Defendant.

37.    Plaintiff received the results of Defendant's alleged investigation into Plaintiff's June 10, 2021 dispute to Trans Union. The Synchrony HSN and Synchrony Zulily inquiries had been deleted. However, Plaintiff never received investigation results relating to her disputes of the Lowe's and PPC accounts as set forth in her June 10, 2021 letter to Trans Union.

38.    On or about July 14, 2021, Plaintiff pulled her Trans Union credit report and found that Defendant was continuing to negatively report the Lowe's and PPC accounts. Plaintiff additionally discovered that Defendant was negatively reporting the Briggs & Stratton account, the Amazon account, the Care Credit account, and the Sam's Club account. Defendant additionally reported inquiries by Syncb and SyncEbay. Defendant did not report the Lowe's account or the PPC account as disputed.

39.    Prior to sending her third round of disputes, Plaintiff completed an FTC Identity Theft Report.

40.    On or about August 26, 2021, Plaintiff sent a dispute to Defendant at P.O. Box

965004, Orlando, FL 32896 concerning the fraudulent use of several of her accounts. Plaintiff stated that she had been the victim of identity theft and that the imposter had accessed her Synchrony online information and changed all of her login information. Plaintiff listed five accounts as being at issue: the Amazon account, the Briggs & Stratton account, the Care Credit account, the PPC account, and the Sam's Club account. Plaintiff disputed all late payments and charges and balances on the accounts as a third party had fraudulently used the accounts. Plaintiff also requested that Defendant provide any information concerning any unlisted accounts. Plaintiff requested that Defendant restore her online access to her accounts and that Defendant stop negatively reporting the accounts to Plaintiff's credit reports. With her dispute, Plaintiff provided a copy of a police report she had filed, as well as a copy of her FTC Fraud Affidavit and provided her phone number. Plaintiff stated that she was only receiving mail at a newly created P.O. Box so as to the protect her mail from identity theft and requested Defendant send all information to said box. Plaintiff provided her name, PO Box, date of birth, and Social Security Number, and sent her dispute certified mail.

41.     On or about August 26, 2021, Plaintiff sent a third dispute to Trans Union in which she again disputed the accounts which Defendant was reporting negatively. These accounts included the Amazon account, the Briggs & Stratton account, the PPC account, the Care Credit account, and the Sam's Club account. Plaintiff also disputed inquiries made by SYNCB and Synchrony EBAY. Plaintiff again provided Trans Union with her name, address, date of birth, and Social Security number. Plaintiff also included a copy of her police report and the FTC Identity Theft Affidavit she had sworn. Trans Union received

this third letter on September 9, 2021 and forwarded same to Defendant.

42.    On or about August 26, 2021, Plaintiff sent a third dispute to Equifax in which she again disputed the accounts which Defendant was reporting negatively. These accounts included the Amazon account, the Briggs & Stratton account, the PPC account, the Care Credit account, and the Sam's Club account. Plaintiff again provided Equifax with her name, address, date of birth, and Social Security number. Plaintiff also included a copy of her police report and the FTC Identity Theft Affidavit she had sworn.  Equifax received this third letter on September 4, 2021 and forwarded Plaintiff's dispute to Defendant.

43.    On or about August 26, 2021, Plaintiff sent a third dispute letter to Experian in which she again disputed the accounts which Defendant was reporting negatively. These accounts included the Lowe's account, the Briggs & Stratton account, the PPC account, the Care Credit account, and the Sam's Club account. Plaintiff also disputed inquiries made by Syncb/Ebay and Synchrony Bank/JCPenney. Plaintiff again provided Experian with her name, address, date of birth, and Social Security number. Plaintiff also included a copy of her police report and the FTC Identity Theft Affidavit she had sworn.  Experian received Plaintiff's dispute on August 31, 2021 and forwarded same to Defendant.

44.    On or about August 30, 2021, Plaintiff received correspondence from Defendant relating to the Amazon account. Defendant offered to waive any amounts of the outstanding balance on the Amazon account if Plaintiff agreed to pay $404.90.

45.    In response to Defendant's August 30, 2021 correspondence, Plaintiff called Defendant to inquire as to the investigation relating to the Amazon account. Defendant stated that it had closed the investigation.

46.     On or about September 6, 2021, Plaintiff received correspondence from Defendant concerning the Amazon account. Defendant stated that Plaintiff owed it a total balance of $1,156.86 with $457.00 due as of September 6, 2021. Defendant stated that Plaintiff's account remained "severely past due" and stated that Plaintiff could call Defendant, log in to her account via Defendant's website, or send a payment via mail. Defendant did not make any mention of Plaintiff's dispute, Plaintiff's fraud claim, or Plaintiff's continuing statements that she could not access her account online nor could she discuss the account over the telephone because of the thief having changed her account verification information.

47.     On or about September 7, 2021, Plaintiff received correspondence from Defendant concerning the Briggs & Stratton account. Defendant stated that Plaintiff owed it a total balance of $8,228.99 with $1,670.00 due as of September 7, 2021. Defendant stated that Plaintiff's account remained "severely past due" and stated that Plaintiff could call Defendant, log in to her account via Defendant's website, or send a payment via mail. Defendant did not make any mention of Plaintiff's dispute, Plaintiff's fraud claim, or Plaintiff's continuing statements that she could not access her account online nor could she discuss the account over the telephone because of the thief having changed her account verification information.

48.     On or about September 7, 2021, Plaintiff received correspondence from Defendant concerning the Care Credit account. Defendant stated that Plaintiff owed it a total balance of $13,351.91 with $2,828.00 due as of September 7, 2021. Defendant stated that Plaintiff's account remained "severely past due" and stated that Plaintiff could call Defendant, log in to her account via Defendant's website, or send a payment via mail. Defendant did not

make any mention of Plaintiff's dispute, Plaintiff's fraud claim, or Plaintiff's continuing statements that she could not access her account online nor could she discuss the account over the telephone because of the thief having changed her account verification information.

49.    On or about September 8, 2021, Plaintiff received correspondence from Defendant concerning the Sam's Club account. Defendant stated that Plaintiff owed it a total balance of $1,772.84 with $476.00 due as of September 8, 2021. Defendant stated that Plaintiff's account remained "severely past due" and stated that Plaintiff could call Defendant, log in to her account via Defendant's website, or send a payment via mail. Defendant did not make any mention of Plaintiff's dispute, Plaintiff's fraud claim, or Plaintiff's continuing statements that she could not access her account online nor could she discuss the account over the telephone because of the thief having changed her account verification information.

50.    On or about September 13, 2021, Plaintiff received correspondence from Defendant concerning the Care Credit account. Defendant stated that it was aware that Plaintiff was claiming fraud and that Defendant had closed the Care Credit account and notified the credit bureaus. Defendant stated that Plaintiff would receive notice in writing upon resolution of Defendant's fraud investigation, which might take 60 days.

51.    On or about September 13, 2021, Plaintiff received a Fraud Investigation Form from Defendant concerning the Care Credit account. Plaintiff returned said form to Defendant and noted that the card was lost/stolen and that $13,391.91 of charges were made without Plaintiff's authorization.

52.    On or about September 30, 2021, Plaintiff received the results of Defendant's alleged investigation into her August 26, 2021 dispute letter which Plaintiff sent to Trans

Union. Defendant continued to negatively report the PPC account and the Lowe's account to Plaintiff's Trans Union credit report. Despite her direct disputes to Defendant, Defendant still failed to mark the Lowe's account as disputed. Additionally, the inquiries made by SYNCB and SyncBEbay continued to appear on Plaintiff's Trans Union credit report.

53.    On or about October 1, 2021, Plaintiff received correspondence from Defendant concerning the PPC account. Defendant stated that Plaintiff owed it a total balance of $5,638.43 with $1,036.00 due as of September 7, 2021. Defendant stated that Plaintiff's account remained "seriously delinquent" and stated that Plaintiff could call Defendant, log in to her account via Defendant's website, or send a payment via mail. Defendant did not make any mention of Plaintiff's dispute, Plaintiff's fraud claim, or Plaintiff's continuing statements that she could not access her account online nor discuss the account over the telephone because of the thief having changed her account verification information.

54.    On or about November 3, 2021, Plaintiff sent a fourth dispute to Trans Union in which she again disputed Defendant's reporting of the PPC account and the Sam's Club account. Plaintiff disputed all late payments on the Sam's Club account and all charges and balances reporting on the PPC account. Plaintiff additionally disputed inquiries made by SYNCB and Synchrony Ebay. Plaintiff again provided Trans Union with her name, address, date of birth, and Social Security number. Plaintiff also included a copy of a police report and the FTC Identity Theft Affidavit she had sworn. Trans Union received Plaintiff's dispute on November 29, 2021 and forwarded same to Defendant.

55.    On or about November 22, 2021, Plaintiff sent another dispute directly to Defendant at its provided address: P.O. Box 965004, Orlando, FL 32896. Plaintiff stated that she had

14

been the victim of identity theft and that the imposter had both applied for credit with Defendant in Plaintiff's name, and also accessed her Synchrony online information and changed all of her login information. Plaintiff listed five accounts as being at issue: the Amazon account, the Briggs & Stratton account, the Care Credit account, the PPC account, and the Sam's Club account. Plaintiff stated that she had attempted to reach Defendant and had been unable to do so. Plaintiff also stated she disputed all charges and balances claimed due and all late payments. Plaintiff requested that Defendant forward copies of all statements on the accounts from January 2020 to the present and provide Plaintiff with any and all online account access on these accounts, including the email and login information used to access her accounts. Plaintiff also requested that Defendant stop reporting these accounts as past due on her credit reports. Plaintiff requested that Defendant cease all collection activities on these accounts and for Defendant to conduct an investigation. Finally, Plaintiff requested the name and phone number for a supervisor in Defendant's fraud department to help in resolving these issues. Plaintiff stated that she was only receiving mail at a newly created PO Box so as to the protect her mail from identity theft and requested Defendant send all information to that box. Plaintiff provided her name, PO Box, date of birth, and Social Security Number, and sent her dispute certified mail.

56.    Defendant never forwarded Plaintiff any of the documentation requested in her November 22, 2021 letter.

57.    In December, 2021, Defendant began calling Plaintiff multiple times demanding Plaintiff make payments on the disputed accounts.

58.    On or about December 18, 2021, Plaintiff attempted to purchase a bed from Ashley

Furniture. Ashley Furniture denied Plaintiff's request for financing.

59.    On or about December 23, 2021, Plaintiff received a notice from Defendant that Ashley Furniture had denied her credit due to "prior unsatisfactory obligation with Synchrony Bank".

60.    On or about December 24, 2021, Plaintiff received the results of Defendant's alleged investigation into her November 3, 2021 dispute letter which Plaintiff sent to Trans Union. The SYNCB inquiry was deleted from her Trans Union credit report. The two disputed accounts and the SyncBEbay inquiry were not mentioned as part of the investigation results and remained on Plaintiff's Trans Union credit report.

61.    In January 2022, Plaintiff was denied a small student loan to continue her education due to negative, inaccurate information being reported to her credit reports.

62.    On or about January 18, 2022, Plaintiff received a copy of her Experian credit report. Defendant continued to report the Care Credit, Lowe's, and PPC accounts as negative accounts on Plaintiff's Experian credit report. Inquiries by Synchrony Bank and SYNCB/JCPenney also continued to appear on Plaintiff's Experian credit report.

63.    On or about January 25, 2022, Plaintiff sent a fourth dispute to Experian in which she disputed the Care Credit, Lowe's, and PPC accounts which Defendant was negatively reporting to her Experian credit report. Plaintiff stated that a third party had fraudulently used the PPC and Care Credit accounts without her permission and that she had been unable to make payments on the Lowe's account because Defendant had locked her out of the account and, therefore, any late payments reporting on the Lowe's account were incorrect. Plaintiff also disputed the Synchrony Bank/JCPenney inquiry appearing on her Experian

credit report. Experian received Plaintiff's dispute and forwarded same to Defendant.

64.     On or about January 25, 2022, Plaintiff sent a fifth dispute to Trans Union in which she again disputed Defendant's reporting of the PPC account and the Sam's Club account. Plaintiff also again disputed inquiries made by Synchrony EBAY and SYNCB.  Trans Union received Plaintiff's dispute on January 28, 2022 and forwarded same to Defendant.

65.     On or about January 25, 2022, Plaintiff sent a fourth dispute to Equifax concerning Defendant's reporting of the Briggs & Stratton account, the Care Credit account, the Lowe's account, the PPC account, and the Sam's Club account. Plaintiff again stated that a third party had fraudulently used her PPC and Sam's Club accounts and that she had been locked out of the remaining three accounts and, therefore, unable to make a payment on same. Plaintiff stated that she had made multiple attempts to contact Defendant to fix this problem concerning her inability to access her account and make payments, but that Defendant had not remedied the problem and, therefore, Plaintiff disputed any late payments on these accounts. Plaintiff also disputed inquires made by SyncB/Ebay and Synchrony Bank/JCPenney. Equifax received Plaintiff's dispute on January 29, 2022 and forwarded same to Defendant.

66.     On or about February 8, 2022, State Employees' Credit Union denied Plaintiff credit based on information from the credit bureaus, delinquent past or present credit obligations, and record of account(s) placed with a collection agency.

67.     On or about February 14, 2022, Defendant called Plaintiff's physician and demanded a copy of every document signed by Plaintiff. Plaintiff's physician requested Plaintiff sign a medical release so that her physician could produce the demanded

documents. Plaintiff signed said release.

68.    On or about February 15, 2022, Plaintiff received a call from a merchant in Tennessee demanding that Plaintiff sign a Synchrony Bank credit card slip and provide it with a copy of her driver's license. Since Plaintiff had not made the charge, Plaintiff refused to sign anything.

69.    On or about February 17, 2022, Plaintiff received the results of Defendant's alleged investigation into her January 25, 2022 dispute which Plaintiff sent to Trans Union. The SYNCB/Ebay inquiry was finally deleted from Plaintiff's Trans Union credit file. However, the investigation results were silent as to the other items Defendant was incorrectly reporting on Plaintiff's Trans Union credit report.

70.    On or about March 3, 2022, Plaintiff pulled a copy of her Experian credit report. Defendant continued to negatively report the Lowe's account to Plaintiff's Experian credit report. Likewise, an inquiry from SyncB/JCPenney continued to appear on Plaintiff's Experian credit report.

71.    On or about August 18, 2022, Plaintiff received a call from Credit Corp. claiming to be Defendant's legal department. Upon information and belief, "Credit Corp." is a debt collector to whom Defendant turned over the fraudulently used accounts.

72.    On or about September 1, 2022, Defendant sent a collection letter to Plaintiff stating that the balance due on the Briggs & Stratton account was $8,580.50.

73.    On or about September 21, 2022, Defendant sent Plaintiff a letter regarding the Care Credit account, stating that if Plaintiff paid $6,322.04, Defendant would waive the remaining balance. Plaintiff also received a statement on said account, same being the first

statement Plaintiff had received in almost two years. The statement showed Defendant had added $2,774.71 in interest in 2022 despite Plaintiff's numerous disputes informing Defendant that a third party had fraudulently used the Care Credit account, as well as her other accounts.

74.    On January 10, 2023, Plaintiff filed a complaint with the South Carolina Department of Consumer Affairs relating to Defendant's conduct as set forth herein.

75.    On or about January 30, 2023, approximately two years after Plaintiff first asserted that she had been the victim of identity theft and Defendant had wrongfully repossessed her tractor, Defendant provided Plaintiff with correspondence stating that it had not repossessed her tractor. This assertion was made despite Plaintiff's tractor having been taken after the actions of the identity thief causing Plaintiff's accounts with Defendant to become negative. Defendant further stated that it was unsure what account Plaintiff was stating lead to her tractor being repossessed, therefore, Defendant could not actually fully investigate Plaintiff's claim that Defendant had repossessed her tractor.

76.    To date, Defendant continues to report fraudulently used derogatory accounts to Plaintiff's credit reports. Additionally, Defendant continues to seek collection on fraudulently used accounts in an amount in excess of $50.00.

77.    To date, Defendant has done no investigation into Plaintiff's fraud claims. Instead of complying with its statutory duties, Defendant has either not responded to Plaintiff's fraud claims or failed to perform any investigation upon same.

## COUNT ONE
### (Fair Credit Reporting Act)

78.    The Plaintiff adopts the averments and allegations of paragraphs 11 through 77 hereinbefore as if fully set forth herein.

79.    Defendant violated 15 U.S.C. §1681s-2(b) by failing to investigate the accuracy of the information reported by the Defendant to the consumer reporting agencies.

80.    On at least one occasion within the past two years, by example only and without limitation, Defendant violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to fully and properly investigate after receiving notice that the Plaintiff disputed the information said Defendant had provided to a consumer reporting agency.

81.    On at least one occasion within the past two years, by example only and without limitation, Defendant violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies.

82.    As a result of Defendant's violations of 15 U.S.C. §1681s-2(b)(1)(A) and (B), Plaintiff suffered actual damages, including but not limited to: damage to reputation and credit reputation, lost credit opportunities, denial of credit, embarrassment, humiliation, frustration, anxiety, loss of sleep, worry, physical sickness and pain, and mental anguish.

83.    The law in this District, the Fourth Circuit, and even nationally has long ago been articulated to require a detailed and searching investigation by a furnisher when it receives a consumer's FCRA dispute through a consumer reporting agency.

84.    The violations by Defendant were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.    In the

alternative, Defendant was negligent, entitling the Plaintiff to recovery under 15 U.S.C. §1681o.

85.    Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorneys' fees from Defendant in an amount to be determined by a jury pursuant to 15 U.S.C. §1681n and §1681o.

**COUNT TWO**
**(Fair Credit Reporting Act)**

86.    The Plaintiff adopts the averments and allegations of paragraphs 11 through 85 hereinbefore as if fully set forth herein.

87.    On one or more occasions within the past two years, by example only and without limitation, Defendant violated 15 U.S.C. §1681s-2(b)(1)(C) and (D) by publishing the Defendant's inaccuracies within Plaintiff's credit files with the credit reporting agencies by failing to correctly report results of an accurate investigation to each credit reporting agency.

88.    Defendant violated 15 U.S.C. §1681s-2(b)(1)(C) by reporting inaccurate, incomplete, false, and misleading results of the investigation, if any, to at least one consumer reporting agency. This includes, but is not limited to, Defendant's failure to report the negative accounts set forth herein as disputed after receipt of a direct dispute from Plaintiff relating to same.

89.    Defendant violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all consumer reporting agencies that the reporting of the accounts the subject of this action was inaccurate, incomplete, false, and misleading.

90.    As a result of Defendant's violations of 15 U.S.C. §1681s-2(b)(1)(C) and (D), the Plaintiff suffered actual damages, including but not limited to: damage to her credit and credit reputation, lost credit opportunities, denial of credit, increased cost of credit, and incurred out of pocket losses.  Additionally, Plaintiff suffered humiliation, anxiety, loss of sleep, frustration, worry, physical sickness and pain, and mental anguish, as well as damages for attorneys' fees.

91.    The violations by Defendant were willful, rendering it liable for punitive damages in an amount to be determined by the jury pursuant to 15 U.S.C. §1681n.  In the alternative, Defendant was negligent, entitling the Plaintiff to recovery under 15 U.S.C. §1681o.

92.    The Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorneys' fees, pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT THREE
### (Truth-in-Lending Act)

93.    Plaintiff hereby adopts all of the allegations set forth in paragraphs 11 through 92 as if set forth fully herein.

94.    The accounts described herein are each an accepted credit card as that term is defined by 15 U.S.C. §1602(m).

95.    The transactions described herein were the result of unauthorized use of the credit cards that are the subject of this action as that term is defined by 15 U.S.C. §1602(p).

96.    Plaintiff disputed the charges alleged herein both in writing and by way of telephone calls to Defendant. Said written disputes specifically set forth that Plaintiff had been the victim of identity theft. Plaintiff provided Defendant a copy of the police report she filed,

a copy of her FTC Identity Theft Affidavit, and identified the accounts in question.

97.    In its purportedly reasonable investigation, to the extent same was performed, Defendant did not review the types or amounts of purchases made relating to Plaintiff's previous purchase pattern, review where said purchases were made, compare the signatures on the credit slips of the unauthorized purchases against authorized purchases, request documentation to assist in verification of Plaintiff's claim, request a written statement from Plaintiff to compare her signature with those on the disputed charges, or any other investigation.

98.    Plaintiff received no benefit from the unauthorized use of her accounts.

99.    The unauthorized charges described herein exceeded $50.00 and occurred after Plaintiff notified Defendant that the credit card described herein had been used by an unauthorized party. Specifically, the credit cards that are the subject of this action were in Plaintiff's name and were fraudulently used by a third party after Plaintiff was a victim of identity theft.

100.    It is Defendant's burden to show that the use of Plaintiff's card was authorized. 15 U.S.C. §1643(b).

101.    Defendant has failed to allege any facts or circumstances that support its assertion that Plaintiff authorized the fraudulent charges.

102.    The Truth-in-Lending Act makes clear that Plaintiff is not responsible for any charges for the unauthorized use of a credit card in excess of $50.00.

103.    Despite Plaintiff notifying Defendant that she was the victim of identity theft, Defendant reported balances in excess of $50.00 to the credit reporting agencies and

23

charged off her accounts with balances in excess of $50.00.

104.    The conduct of Defendant has also given rise to actual damages in the form of mental anguish and suffering, physical sickness, anxiety, worry, embarrassment, loss of sleep, frustration, and extreme emotional distress, for which Plaintiff seeks damages. Plaintiff also seeks twice the amount of the inaccurate finance charges suffered by her and all attorneys' fees and costs as set forth by 15 U.S.C. §1640.

## COUNT FOUR
### (South Carolina Consumer Protection Code)

105.    Plaintiff hereby adopts all of the allegations set forth in paragraphs 11 through 104 as if set forth fully herein.

106.    The transaction described herein is a Consumer Credit Transaction as that term is defined by the South Carolina Consumer Protection Code. S.C. Code Ann. §37-1-201.

107.    Plaintiff is a Consumer as that term is defined by the South Carolina Consumer Protection Code. *Id*.

108.    Defendant violated S.C. Code Ann. §37-5-108(5)(b)(xi) by repossessing Plaintiff's property without first sending Plaintiff a Notice of Right to Cure.

109.    Due to Defendant's violation of the South Carolina Consumer Protection Code, Plaintiff has suffered mental anguish and suffering, physical sickness, anxiety, worry, embarrassment, loss of sleep, frustration, and extreme emotional distress, for which Plaintiff seeks damages. Plaintiff likewise seeks an award of statutory damages and attorneys' fees for Defendant's violation of that South Carolina Consumer Protection Code.

## COUNT FIVE
### (Defamation - Libel)

110.    Plaintiff hereby adopts all of the allegations set forth in paragraphs 11 through 109 as if set forth fully herein.

111.    Defendant made false statements about Plaintiff. Specifically, Defendant sought collection of accounts which a third party had fraudulently used, a fact that Defendant knew, or should have known.

112.    Defendant published the false information to a third party, specifically, third party debt collectors, who used this information to attempt to collect money from Plaintiff on debts that a third party had fraudulently incurred.

113.    Defendant was at fault for the making of this statement. Defendant was aware as to Plaintiff's fraud allegations and referred the accounts despite this knowledge. Likewise, Defendant did not inform these third-party debt collectors that Plaintiff disputed the accounts as fraudulently used.

114.    Plaintiff has suffered harm due to the actions of Defendant. This harm includes, but is not limited to, continued collection attempts, constant harassment from debt collectors, damage to her reputation, mental anguish and suffering, physical sickness, anxiety, worry, embarrassment, loss of sleep, frustration, and extreme emotional distress, for which Plaintiff seeks damages.

115.    As Defendant's conduct was willful, Plaintiff seeks an award of punitive damages to deter similar future conduct.

## COUNT SIX
### (Conversion)

116.    Plaintiff hereby adopts all of the allegations set forth in paragraphs 11 through 115 as if set forth fully herein.

117.    Plaintiff was the possessor and owner of her tractor.

118.    Defendant took Plaintiff's tractor for its own benefit.

119.    Prior to taking of the tractor, Defendant failed to provide a Notice of Right to Cure required by the South Carolina Protection Code. S.C. Code Ann. §37-5-111.

120.    Defendant's taking of Plaintiff's tractor prior to providing a Notice of Right to cure amounts to a conversion of her property. S.C. Code Ann. §37-5-111(7).

121.    Plaintiff has requested the return of her property and Defendant has refused to return same.

122.    Upon information and belief, Defendant has sold or otherwise transferred Plaintiff's property and same is no longer available to Plaintiff.

123.    Due to Defendant's conversion, Plaintiff is entitled to the value of the converted property. Plaintiff also seeks punitive damages due to Defendant's conversion of her property.

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A.    Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.      Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C.      Costs and reasonable attorneys' fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2);

D.      Actual and statutory damages due to Defendant's violations of 15 U.S.C. §1643;

E.      Reimbursement of double the improper finance charges charged to Plaintiff pursuant to 15 U.S.C. §1640;

F.      Attorneys' fees and costs pursuant to 15 U.S.C. §1640;

G.      Actual damages, statutory damages, and attorneys' fees and costs due to Defendant's violations of S.C. Code Ann. §37-5-108;

H.      Actual, compensatory, and punitive damages for Defendant's violations of South Carolina common law as set forth herein; and

I.      For such other and further relief as the Court may deem just and proper

                                        */s/ Penny Hays Cauley*
                                        Penny Hays Cauley, Fed.  ID No.  10323

                                        */s/ William K. Geddings*
                                        William K. Geddings, Fed.  ID No. 12584
                                        Attorneys for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

*/s/ Penny Hays Cauley*
Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL**

(RESTRICTED DELIVERY)
Synchrony Bank
c/o Brian D. Doubles - CEO
777 Long Ridge Rd.
Stamford. CT 06902