# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## FLORENCE DIVISION

| | |
|---|---|
| ANGELA SALYER, | Case No. 4:23-cv-01233-JD |
| Plaintiff, | ANSWER AND DEFENSES TO THE COMPLAINT OF DEFENDANT SYNCHRONY BANK |
| v. | |
| SYNCHRONY BANK, | |
| Defendant. | |

## ANSWER

Defendant Synchrony Bank ("Synchrony") hereby answers the Complaint ("Complaint") of Plaintiff Angela Salyer ("Salyer"). Unless expressly admitted herein, Synchrony lacks sufficient information or knowledge to admit or deny the allegations of the Complaint and, on that basis, denies the allegations as follows:

## COMPLAINT

1. **This is an action brought by Plaintiff, Angela Salyer, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, el seq, (hereinafter "FCRA"), the Truth in Lending Act, 15 U.S.C. §1601, el seq, (hereinafter "TILA"), the South Carolina Consumer Protection Code, S.C. Code Ann. §37-5-108, el seq., and South Carolina common law as set forth herein.**

1. Answering Paragraph 1 of the Complaint, the allegations contain a conclusion of law to which no response is required. To the extent a response is required, Synchrony lacks sufficient information or knowledge to admit or deny the allegations and, on that basis, denies the allegations.

2. **The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.**

2.      Answering Paragraph 2 of the Complaint, the allegations contain a conclusion of law to which no response is required.  To the extent a response is required, Synchrony refers all conclusions of law to the Court.

**3.      Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).**

3.      Answering Paragraph 3 of the Complaint, the allegations contain a conclusion of law to which no response is required.  To the extent a response is required, Synchrony refers all conclusions of law to the Court.

**4.      To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681c and 1681e, which are two of the cornerstone provisions of the FCRA.**

4.      Answering Paragraph 4 of the Complaint, the allegations contain a conclusion of law to which no response is required.  To the extent a response is required, Synchrony refers all conclusions of law to the Court.

**5.      One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:**

> **The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.**

**See 15 U.S.C. § 168l(a)(l).**

5.      Answering Paragraph 5 of the Complaint, the allegations contain a conclusion of law to which no response is required.  To the extent a response is required, Synchrony refers all conclusions of law to the Court.

**6.      The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:**

**[W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny hi111 the opportunity to obtain a 111ortgage or buy a home. We are not nearly as 11111ch concerned over the possible 111istaken tum-down of a consumer for a luxury ite111 as we are over the possible destruction of his good na111e without his knowledge and without reason. * * * [A}s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed (emphasis added).**

*Bryant v. TRW, Inc.*, **689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].**

6.     Answering Paragraph 6 of the Complaint, the allegations contain a conclusion of law to which no response is required.  To the extent a response is required, Synchrony refers all conclusions of law to the Court.

## JURISDICTION AND VENUE

**7.     This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C, §1681p, the Truth-in-Lending Act, 15 U.S.C. §1640(e), and 28 U.S.C. §1331 and §1332.**

7.     Answering Paragraph 7 of the Complaint, the allegations contain a statement of jurisdiction to which no response is required.  Further, the allegations constitute a conclusion of law to which no response is required.  To the extent a response is required, Synchrony refers all conclusions of law to the Court.

**8.     Venue is proper in the Florence Division because the Plaintiff resides in Horry County and the Defendant transacted business in this division.**

8.     Answering Paragraph 8 of the Complaint, the allegations contain a statement of venue to which no response is required.  Furthermore, the allegations contain a conclusion of law to which no response is required. To the extent a response is required, Synchrony refers all conclusions of law to the Court.

## PARTIES

**9.      Plaintiff, Angela Salyer, is a resident and citizen of the State of South Carolina, Horry County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).**

9.      Synchrony lacks sufficient information or knowledge to admit or deny the allegations and,

on that basis, denies the allegations.

**10.      Defendant Synchrony Bank ("Synchrony"), whose corporate status is unknown to Plaintiff, may be served with process by way of its CEO, Brian D. Doubles, at its corporate headquarters, 777 Long Ridge Rd., Stamford. CT 06902. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.**

10.      Answering Paragraph 10 of the Complaint, Synchrony states only that it is a federally-

chartered savings bank. The remaining allegations are conclusions of law to which no response is

required. To the extent a response is required, Synchrony denies the allegations as stated.

## FACTUAL ALLEGATIONS

**11.      Beginning by at least January, 2020 and continuing throughout 2021 and into 2022, Plaintiff has been, and continues to be, the victim of such extensive identity theft that it has compromised all parts of her life, including her credit accounts, personal information, and e-mail information. The invasion into Plaintiffs life has been of such a nature as to require her to purchase a P.O. Box so as to protect her physical mail.**

11.      Answering Paragraph 11 of the Complaint, Synchrony lacks sufficient information or

knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**12.      After becoming the victim of identity theft, Plaintiff was essentially locked out of all of her accounts. This includes multiple accounts with Defendant: a Synchrony Amazon account with account number ending 6620 ("Amazon account"), a Synchrony Briggs & Stratton account with account number ending 0215 ("Briggs & Stratton account"), a Synchrony Care Credit account with account number ending 8822 ("Care Credit account"), a Synchrony PPC Paypal account with account number ending 0579 ("PPC account"), a Synchrony Lowe's account with account number ending 1626 ("Lowe's account"), and a Synchrony Sam's Club account with account number ending 4678 ("Sam's Club account").**

12.      Answering Paragraph 12 of the Complaint, Synchrony lacks sufficient information or

knowledge to admit or deny the allegations and, on that basis, denies the allegations.

– 4 –

**13.     Once Plaintiff became aware that she had been the victim of fraud, she contacted Defendant on multiple occasions. These communications consisted of, but were not necessarily limited to, telephone calls, letters, and disputes through the credit reporting agencies. Plaintiff also tried to access the accounts online but was unable to do so as the identity thief had changed the accounts' access information.**

13.     Answering Paragraph 13 of the Complaint, Synchrony lacks sufficient information or

knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**14.     On or about March 17, 2021, Plaintiff sent a dispute letter to Trans Union in which she disputed the Lowe's account and the PPC account and stated that both had been fraudulently used without her permission. Plaintiff likewise disputed inquiries by Synchrony HSN and Synchrony Zulily. With her dispute, Plaintiff included her name, address, date of birth, and Social Security number. Trans Union forwarded this dispute to Defendant.**

14.     Answering Paragraph 14 of the Complaint, the allegations refer to a written document that

speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony

denies the allegations.

**15.     On or about March 17, 2021, Plaintiff also sent a dispute letter to Experian in which she disputed the Lowe's account and the PPC account and stated that these two accounts had been fraudulently used without her permission. Plaintiff also disputed inquiries by Synchrony Bank JCPenney and Synchrony Bank Ebay. With her dispute, Plaintiff included her name, address, date of birth, and Social Security number. Experian forward this dispute to Defendant.**

15.     Answering Paragraph 15 of the Complaint, the allegations refer to a written document that

speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony

denies the allegations.

**16.     On or about March 17, 2021, Plaintiff sent a dispute letter to Equifax in which she disputed the Lowe's account and the PPC account and stated that these two accounts had been fraudulently used without her permission. Plaintiff also disputed inquiries by Synchrony Bank JCPenney and Synchrony Bank Ebay. With her dispute, Plaintiff included her name, address, date of birth, and Social Security number. Equifax forward this dispute to Defendant.**

16.     Answering Paragraph 16 of the Complaint, the allegations refer to a written document that

speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony

denies the allegations.

**17.    On or about March 18, 2021, Plaintiff received a call from Defendant relating to the PPC account in which Defendant stated that the PPC account was maxed out and that Plaintiff needed to make a payment. Plaintiff informed the caller that she had been the victim of identity theft and that a third party had fraudulently used the PPC account.**

17.    Answering Paragraph 17 of the Complaint, Synchrony lacks sufficient information or knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**18.    Following the March 18, 2021 call, Defendant emailed Plaintiff under the name "PayPal billing" and stated that the last charge on the PPC account was $498.95 sent to Bit-Trade Exchange. Plaintiff neither made the charge nor did she purchase cryptocurrency. Accordingly, Plaintiff sent Defendant a letter notifying it that a third party had fraudulently used the PPC account.**

18.    Answering Paragraph 18 of the Complaint, the allegations refer to a written document that speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony denies the allegations.

**19.    On or about March 31, 2021, Plaintiff returned home to find that her tractor was gone. Plaintiff believed Defendant had repossessed her tractor and, therefore, Plaintiff tried calling Defendant directly but was not able to speak to anyone because she could not correctly answer the verification questions as a third party had changed her access information. Defendant never provided Plaintiff any information regarding the tractor, whether said tractor had been repossessed, nor did Defendant provide Plaintiff a notice of right to cure prior to repossessing Plaintiffs tractor.**

19.    Answering Paragraph 19 of the Complaint, Synchrony lacks sufficient information or knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**20.    On or about March 31, 2021, Plaintiff sent Defendant a letter stating that a third party had fraudulently changed her verification information. Plaintiff requested Defendant call her so she could have access to her accounts.**

20.    Answering Paragraph 20 of the Complaint, the allegations refer to a written document that speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony denies the allegations.

**21.    On or about April 7, 2021, Plaintiff received a Fraud Investigation Form from Defendant relating to the PPC account. Plaintiff completed same and returned same to Defendant.**

21.     Answering Paragraph 21 of the Complaint, the allegations refer to a written document that speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony denies the allegations.

**22.     On or about April 27, 2021, Plaintiff received correspondence from Defendant relating to her Briggs & Stratton account. Defendant stated that it was lowering Plaintiffs credit limit to $8,290.00 due to "Too Many Revolving Accounts with High Balance Compared to Credit Limit", "Not Enough Balance Paid Down Over Time on Real Estate Secured Loans", "Delinquent or Derogatory Status on Real Estate Secured Loan is too Recent", and "Too Many Bankcards with High Balance Compared to Credit Limit". Defendant stated that it had accessed and relied upon Plaintiffs Trans Union credit report in making its determination to lower Plaintiffs credit limit. Defendant did not say anything about the repossession or give Plaintiff any information relating to redemption of the wrongfully repossessed equipment.**

22.     Answering Paragraph 22 of the Complaint, the allegations refer to a written document that speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony denies the allegations.

**23.     On or about April 27, 2021, Plaintiff received the results of Defendant's alleged investigation into the dispute Plaintiff mailed to Trans Union on March 17, 2021. Defendant updated the Lowe's Account to being current with a 30- and 60- day late, and updated the PPC account to Current, Paid or Paying as Agreed without any late payments.**

23.     Answering Paragraph 23 of the Complaint, Synchrony lacks sufficient information or knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**24.     On or about May 13, 2021, Plaintiff received a call from an individual that Defendant hired to repossess a building Plaintiff used for her pigs. Defendant did not send Plaintiff a notice of right to cure relating to the building.**

24.     Answering Paragraph 24 of the Complaint, Synchrony lacks sufficient information or knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**25.     On or about May 24, 2021, Plaintiff received a Notice of Right to Cure relating to the Sam's Club account.**

25.     Answering Paragraph 25 of the Complaint, the allegations refer to a written document that speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony denies the allegations.

**26.     On or about June 10, 2021, Plaintiff sent a second dispute letter to Trans Union in which she again disputed the Lowe's account. Plaintiff stated that Defendant should remove the late payment notation from her credit report as she had attempted to make payments on the account and had been locked out by Defendant due to ongoing fraud. Plaintiff additionally disputed inquiries by Synchrony HSN and Synchrony Zulily. Plaintiff again included in her dispute her name, address, date of birth, and Social Security number. Trans Union received Plaintiffs dispute on June 25, 2021 and forwarded Plaintiffs dispute to Defendant.**

26.     Answering Paragraph 26 of the Complaint, the allegations refer to a written document that speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony denies the allegations.

**27.     On or about June 10, 2021, Plaintiff sent Experian a second letter again informing Experian that she had been the victim of identity theft. Plaintiff disputed Defendant's reporting of the Lowe's account and the PPC account. Plaintiff also disputed inquiries by Synchrony JCPenney and Synchrony Ebay. Plaintiff again provided Experian with her name, address, date of birth, and Social Security number. Experian received Plaintiffs dispute on June 15, 2021 and forwarded Plaintiffs dispute to Defendant.**

27.     Answering Paragraph 27 of the Complaint, the allegations refer to a written document that speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony denies the allegations.

**28.     On or about June 10, 2021, Plaintiff sent Equifax a second letter informing Equifax that she had been the victim of identity theft. Plaintiff disputed Defendant's reporting of the Lowe's account and the PPC account. Plaintiff also disputed inquiries by Synchrony JCPenney and Synchrony Ebay. Plaintiff again provided Equifax with her name, address, date of birth, and Social Security number. Equifax received Plaintiffs dispute on June 15, 2021 and forwarded Plaintiffs dispute to Defendant.**

28.     Answering Paragraph 28 of the Complaint, the allegations refer to a written document that speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony denies the allegations.

**29.     On or about June 10, 2021, Plaintiff also sent a dispute letter directly to Defendant concerning the fraudulent use of the Lowe's account and the PPC account. Plaintiff requested that Defendant provide her with copies of all statements generated over the last 18 months relating to those two accounts and to stop all collection activities on those accounts until an investigation was conducted, and that Plaintiff be provided with a point of contact who could help in resolving these issues. With her dispute, Plaintiff included her name, address, Social Security number, and date of birth.**

29.     Answering Paragraph 29 of the Complaint, the allegations refer to a written document that

speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony

denies the allegations.

**30.     On or about June 14, 2021, Plaintiff received a Notice of Right to Cure from Defendant concerning an account ending in 2347.**

30.     Answering Paragraph 30 of the Complaint, the allegations refer to a written document that

speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony

denies the allegations.

**31.     On or about June 23, 2021, Plaintiff sent Defendant a check for $771.00 to try to stop repossession of her building.**

31.     Answering Paragraph 31 of the Complaint, the allegations refer to a written document that

speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony

denies the allegations.

**32.     On or about June 29, 2021, Plaintiff received correspondence from Defendant concerning the Lowe's account. Defendant stated that it had closed the Lowe's account and notified the credit bureaus to remove the Lowe's account from Plaintiffs credit file. Defendant stated that it would send Plaintiff a letter when Defendant resolved Plaintiffs fraud claim, which might take up to 60 days.**

32.     Answering Paragraph 32 of the Complaint, the allegations refer to a written document that

speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony

denies the allegations.

**33.     On or about July 5, 2021, Plaintiff received correspondence from Defendant concerning the PPC account. Defendant stated that it had reviewed the account in response to Plaintiffs "credit bureau reporting dispute" and the review indicated that Defendant was**

**correctly reporting the PPC account. Defendant stated that the account was reported lost or stolen on April 2, 2021.**

33.    Answering Paragraph 33 of the Complaint, the allegations refer to a written document that

speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony

denies the allegations.

**34.    On or about July 10, 2021, Plaintiff received the results of Defendant's alleged investigation of her June 10, 2021 dispute to Equifax. Defendant continued to negatively report the PPC account and the Lowe's account to Plaintiffs Equifax credit report. Defendant was also reporting the Amazon account, the Sam's Club account, the Care Credit account, and the Briggs & Stratton account negatively to Plaintiffs Equifax credit report.**

34.    Answering Paragraph 34 of the Complaint, the allegations refer to a written document that

speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony

denies the allegations.

**35.    Plaintiff did not receive results of any investigation by Defendant into her second dispute mailed to Experian.**

35.    Answering Paragraph 35 of the Complaint, Synchrony lacks sufficient information or

knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**36.    Plaintiff did not receive a response to her June 10, 2021 letter to Defendant.**

36.    Answering Paragraph 36 of the Complaint, Synchrony lacks sufficient information or

knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**37.    Plaintiff received the results of Defendant's alleged investigation into Plaintiffs June 10, 2021 dispute to Trans Union. The Synchrony HSN and Synchrony Zulily inquiries had been deleted. However, Plaintiff never received investigation results relating to her disputes of the Lowe's and PPC accounts as set forth in her June 10, 2021 letter to Trans Union.**

37.    Answering Paragraph 37 of the Complaint, Synchrony lacks sufficient information or

knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**38.    On or about July 14, 2021, Plaintiff pulled her Trans Union credit report and found that Defendant was continuing to negatively report the Lowe's and PPC accounts. Plaintiff additionally discovered that Defendant was negatively reporting the Briggs & Stratton account, the Amazon account, the Care Credit account, and the Sam's Club account.**

**Defendant additionally reported inquiries by Synch and SyncEbay. Defendant did not report the Lowe's account or the PPC account as disputed.**

38.    Answering Paragraph 38 of the Complaint, the allegations refer to a written document that speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony denies the allegations.

**39.    Prior to sending her third round of disputes, Plaintiff completed an FTC Identity Theft Report.**

39.    Answering Paragraph 39 of the Complaint, Synchrony lacks sufficient information or knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**40.    On or about August 26, 2021, Plaintiff sent a dispute to Defendant at P.O. Box 965004, Orlando, FL 32896 concerning the fraudulent use of several of her accounts. Plaintiffs credit that she had been the victim of identity theft and that the imposter had accessed her Synchrony online information and changed all of her login information, Plaintiff listed five accounts as being at issue: the Amazon account, the Briggs & Stratton account, the Care Credit account, the PPC account, and the Sam's Club account. Plaintiff disputed all late payments and charges and balances on the accounts as a third party had fraudulently used the accounts. Plaintiff also requested that Defendant provide any information concerning any unlisted accounts. Plaintiff requested that Defendant restore her online access to her accounts and that Defendant stop negatively reporting the accounts to Plaintiffs credit reports. With her dispute, Plaintiff provided a copy of a police report she had filed, as well as a copy of her FTC Fraud Affidavit and provided her phone number. Plaintiff stated that she was only receiving mail at a newly created P.O. Box so as to the protect her mail from identity theft and requested Defendant send all information to said box. Plaintiff provided her name, PO Box, date of birth, and Social Security Number, and sent her dispute certified mail.**

40.    Answering Paragraph 40 of the Complaint, the allegations refer to a written document that speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony denies the allegations.

**41.    On or about August 26, 2021, Plaintiff sent a third dispute to Trans Union in which she again disputed the accounts which Defendant was reporting negatively. These accounts included the Amazon account, the Briggs & Stratton account, the PPC account, the Care Credit account, and the Sam's Club account. Plaintiff also disputed inquiries made by SYNCB and Synchrony EBAY. Plaintiff again provided Trans Union with her name, address, date of birth, and Social Security number. Plaintiff also included a copy of her police report and the FTC Identity Theft Affidavit she had sworn. Trans Union received this third letter on September 9, 2021 and forwarded same to Defendant.**

41.     Answering Paragraph 41 of the Complaint, the allegations refer to a written document that speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony denies the allegations.

**42.     On or about August 26, 2021, Plaintiff sent a third dispute to Equifax in which she again disputed the accounts which Defendant was reporting negatively. These accounts included the Amazon account, the Briggs & Stratton account, the PPC account, the Care Credit account, and the Sam's Club account. Plaintiff again provided Equifax with her name, address, date of birth, and Social Security number. Plaintiff also included a copy of her police report and the FTC Identity Theft Affidavit she had sworn. Equifax received this third letter on September 4, 2021 and forwarded Plaintiffs dispute to Defendant.**

42.     Answering Paragraph 42 of the Complaint, the allegations refer to a written document that speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony denies the allegations.

**43.     On or about August 26, 2021, Plaintiff sent a third dispute letter to Experian in which she again disputed the accounts which Defendant was reporting negatively. These accounts included the Lowe's account, the Briggs & Stratton account, the PPC account, the Care Credit account, and the Sam's Club account. Plaintiff also disputed inquiries made by Syncb/Ebay and Synchrony Bank/JCPenney. Plaintiff again provided Experian with her name, address, date of birth, and Social Security number. Plaintiff also included a copy of her police report and the FTC Identity Theft Affidavit she had sworn. Experian received Plaintiffs dispute on August 31, 2021 and forwarded same to Defendant.**

43.     Answering Paragraph 43 of the Complaint, the allegations refer to a written document that speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony denies the allegations.

**44.     On or about August 30, 2021, Plaintiff received correspondence from Defendant relating to the Amazon account. Defendant offered to waive any amounts of the outstanding balance on the Amazon account if Plaintiff agreed to pay $404.90.**

44.     Answering Paragraph 44 of the Complaint, the allegations refer to a written document that speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony denies the allegations.

**45.     In response to Defendant's August 30, 2021 correspondence, Plaintiff called Defendant to inquire as to the investigation relating to the Amazon account. Defendant stated that it had closed the investigation.**

45.     Answering Paragraph 45 of the Complaint, Synchrony lacks sufficient information or

knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**46.     On or about September 6, 2021, Plaintiff received correspondence from Defendant concerning the Amazon account. Defendant stated that Plaintiff owed it a total balance of $1,156.86 with $457.00 due as of September 6, 2021. Defendant stated that Plaintiffs account remained "severely past due" and stated that Plaintiff could call Defendant, log in to her account via Defendant's website, or send a payment via mail. Defendant did not make any mention of Plaintiffs dispute, Plaintiffs fraud claim, or Plaintiffs continuing statements that she could not access her account online nor could she discuss the account over the telephone because of the thief having changed her account verification information.**

46.     Answering Paragraph 46 of the Complaint, the allegations refer to a written document that

speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony

denies the allegations.

**47.     On or about September 7, 2021, Plaintiff received correspondence from Defendant concerning the Briggs & Stratton account. Defendant stated that Plaintiff owed it a total balance of $8,228.99 with $1,670.00 due as of September 7, 2021. Defendant stated that Plaintiffs account remained "severely past due" and stated that Plaintiff could call Defendant, log in to her account via Defendant's website, or send a payment via mail. Defendant did not make any mention of Plaintiffs dispute, Plaintiffs fraud claim, or Plaintiffs continuing statements that she could not access her account online nor could she discuss the account over the telephone because of the thief having changed her account verification information.**

47.     Answering Paragraph 47 of the Complaint, the allegations refer to a written document that

speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony

denies the allegations.

**48.     On or about September 7, 2021, Plaintiff received correspondence from Defendant concerning the Care Credit account. Defendant stated that Plaintiff owed it a total balance of $13,35 I .91 with $2,828.00 due as of September 7, 2021. Defendant stated that Plaintiffs account remained "severely past due" and stated that Plaintiff could call Defendant, log in to her account via Defendant's website, or send a payment via mail. Defendant did not make any mention of Plaintiffs dispute, Plaintiffs fraud claim, or Plaintiffs continuing statements that she could not access her account online nor could she discuss the account over the telephone because of the thief having changed her account verification information.**

48.     Answering Paragraph 48 of the Complaint, the allegations refer to a written document that speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony denies the allegations.

**49.     On or about September 8, 2021, Plaintiff received correspondence from Defendant concerning the Sam's Club account. Defendant stated that Plaintiff owed it a total balance of $1,772.84 with $476.00 due as of September 8, 2021. Defendant stated that Plaintiffs account remained "severely past due" and stated that Plaintiff could call Defendant, log in to her account via Defendant's website, or send a payment via mail. Defendant did not make any mention of Plaintiffs dispute, Plaintiffs fraud claim, or Plaintiffs continuing statements that she could not access her account online nor could she discuss the account over the telephone because of the thief having changed her account verification information.**

49.     Answering Paragraph 49 of the Complaint, the allegations refer to a written document that speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony denies the allegations.

**50.     On or about September 13, 2021, Plaintiff received correspondence from Defendant concerning the Care Credit account. Defendant stated that it was aware that Plaintiff was claiming fraud and that Defendant had closed the Care Credit account and notified the credit bureaus. Defendant stated that Plaintiff would receive notice in writing upon resolution of Defendant's fraud investigation, which might take 60 days.**

50.     Answering Paragraph 50 of the Complaint, the allegations refer to a written document that speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony denies the allegations.

**51.     On or about September 13, 2021, Plaintiff received a Fraud Investigation Form from Defendant concerning the Care Credit account. Plaintiff returned said form to Defendant and noted that the card was lost/stolen and that $13,391.91 of charges were made without Plaintiffs authorization.**

51.     Answering Paragraph 51 of the Complaint, the allegations refer to a written document that speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony denies the allegations.

**52.     On or about September 30, 2021, Plaintiff received the results of Defendant's alleged investigation into her August 26, 2021 dispute letter which Plaintiff sent to Trans Union. Defendant continued to negatively report the PPC account and the Lowe's account to**

– 14 –

**Plaintiffs Trans Union credit report. Despite her direct disputes to Defendant, Defendant still failed to mark the Lowe's account as disputed. Additionally, the inquiries made by SYNCB and SyncBEbay continued to appear on Plaintiffs Trans Union credit report.**

52.     Answering Paragraph 52 of the Complaint, Synchrony lacks sufficient information or knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**53.     On or about October 1, 2021, Plaintiff received correspondence from Defendant concerning the PPC account. Defendant stated that Plaintiff owed it a total balance of $5,638.43 with $1,036.00 due as of September 7, 2021. Defendant stated that Plaintiffs account remained "seriously delinquent" and stated that Plaintiff could call Defendant, log in to her account via Defendant's website, or send a payment via mail. Defendant did not make any mention of Plaintiffs dispute, Plaintiffs fraud claim, or Plaintiffs continuing statements that she could not access her account online nor discuss the account over the telephone because of the thief having changed her account verification information.**

53.     Answering Paragraph 53 of the Complaint, the allegations refer to a written document that speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony denies the allegations.

**54.     On or about November 3, 2021, Plaintiff sent a fourth dispute to Trans Union in which she again disputed Defendant's reporting of the PPC account and the Sam's Club account. Plaintiff disputed all late payments on the Sam's Club account and all charges and balances reporting on the PPC account. Plaintiff additionally disputed inquiries made by SYNCB and Synchrony Ebay. Plaintiff again provided Trans Union with her name, address, date of birth, and Social Security number. Plaintiff also included a copy of a police report and the FTC Identity Theft Affidavit she had sworn. Trans Union received Plaintiffs dispute on November 29, 2021 and forwarded same to Defendant.**

54.     Answering Paragraph 54 of the Complaint, the allegations refer to a written document that speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony denies the allegations.

**55.     On or about November 22, 2021, Plaintiff sent another dispute directly to Defendant at its provided address: P.O. Box 965004, Orlando, FL 32896. Plaintiff stated that she had been the victim of identity theft and that the imposter had both applied for credit with Defendant in Plaintiffs name, and also accessed her Synchrony online information and changed all of her login information. Plaintiff listed five accounts as being at issue: the Amazon account, the Briggs & Stratton account, the Care Credit account, the PPC account, and the Sam's Club account. Plaintiff stated that she had attempted to reach Defendant and had been unable to do so. Plaintiff also stated she disputed all charges and balances claimed due and all late payments. Plaintiff requested that Defendant forward copies of all statements**

**on the accounts from January 2020 to the present and provide Plaintiff with any and all online account access on these accounts, including the email and login information used to access her accounts. Plaintiff also requested that Defendant stop reporting these accounts as past due on her credit reports. Plaintiff requested that Defendant cease all collection activities on these accounts and for Defendant to conduct an investigation. Finally, Plaintiff requested the name and phone number for a supervisor in Defendant's fraud department to help in resolving these issues. Plaintiff stated that she was only receiving mail at a newly created PO Box so as to the protect her mail from identity theft and requested Defendant send all information to that box. Plaintiff provided her name, PO Box, date of birth, and Social Security Number, and sent her dispute certified mail.**

55.     Answering Paragraph 55 of the Complaint, the allegations refer to a written document that speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony denies the allegations.

**56.     Defendant never forwarded Plaintiff any of the documentation requested in her November 22, 2021 letter.**

56.     Answering Paragraph 56 of the Complaint, Synchrony lacks sufficient information or knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**57.     In December, 2021, Defendant began calling Plaintiff multiple times demanding Plaintiff make payments on the disputed accounts.**

57.     Answering Paragraph 57 of the Complaint, Synchrony lacks sufficient information or knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**58.     On or about December 18, 2021, Plaintiff attempted to purchase a bed from Ashley Furniture. Ashley Furniture denied Plaintiffs request for financing.**

58.     Answering Paragraph 58 of the Complaint, Synchrony lacks sufficient information or knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**59.     On or about December 23, 2021, Plaintiff received a notice from Defendant that Ashley Furniture had denied her credit due to "prior unsatisfactory obligation with Synchrony Bank".**

59.     Answering Paragraph 59 of the Complaint, the allegations refer to a written document that speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony denies the allegations.

**60.     On or about December 24, 2021, Plaintiff received the results of Defendant's alleged investigation into her November 3, 2021 dispute letter which Plaintiff sent to Trans Union. The SYNCB inquiry was deleted from her Trans Union credit report. The two disputed accounts and the SyncBEbay inquiry were not mentioned as part of the investigation results and remained on Plaintiffs Trans Union credit report.**

60.     Answering Paragraph 60 of the Complaint, Synchrony lacks sufficient information or knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**61.     In January 2022, Plaintiff was denied a small student loan to continue her education due to negative, inaccurate information being reported to her credit reports.**

61.     Answering Paragraph 61 of the Complaint, Synchrony lacks sufficient information or knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**62.     On or about January 18, 2022, Plaintiff received a copy of her Experian credit report. Defendant continued to report the Care Credit, Lowe's, and PPC accounts as negative accounts on Plaintiffs Experian credit report. Inquiries by Synchrony Bank and SYNCB/JCPenney also continued to appear on Plaintiffs Experian credit report.**

62.     Answering Paragraph 62 of the Complaint, the allegations refer to a written document that speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony denies the allegations.

**63.     On or about January 25, 2022, Plaintiff sent a fourth dispute to Experian in which she disputed the Care Credit, Lowe's, and PPC accounts which Defendant was negatively reporting to her Experian credit report. Plaintiff stated that a third party had fraudulently used the PPC and Care Credit accounts without her permission and that she had been unable to make payments on the Lowe's account because Defendant had locked her out of the account and, therefore, any late payments reporting on the Lowe's account were incorrect. Plaintiff also disputed the Synchrony Bank/JCPenney inquiry appearing on her Experian credit report. Experian received Plaintiffs dispute and forwarded same to Defendant.**

63.     Answering Paragraph 63 of the Complaint, the allegations refer to a written document that speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony denies the allegations.

**64.     On or about January 25, 2022, Plaintiff sent a fifth dispute to Trans Union in which she again disputed Defendant's reporting of the PPC account and the Sam's Club account. Plaintiff also again disputed inquiries made by Synchrony EBAY and SYNCB. Trans Union received Plaintiffs dispute on January 28, 2022 and forwarded same to Defendant.**

64.     Answering Paragraph 64 of the Complaint, the allegations refer to a written document that speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony denies the allegations.

**65.     On or about January 25, 2022, Plaintiff sent a fourth dispute to Equifax concerning Defendant's reporting of the Briggs & Stratton account, the Care Credit account, the Lowe's account, the PPC account, and the Sam's Club account. Plaintiff again stated that a third party had fraudulently used her PPC and Sam's Club accounts and that she had been locked out of the remaining three accounts and, therefore, unable to make a payment on same. Plaintiff stated that she had made multiple attempts to contact Defendant to fix this problem concerning her inability to access her account and make payments, but that Defendant had not remedied the problem and, therefore, Plaintiff disputed any late payments on these accounts. Plaintiff also disputed inquires made by SyncB/Ebay and Synchrony Bank/JCPenney. Equifax received Plaintiffs dispute on January 29, 2022 and forwarded same to Defendant.**

65.     Answering Paragraph 65 of the Complaint, the allegations refer to a written document that speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony denies the allegations.

**66.     On or about February 8, 2022, State Employees' Credit Union denied Plaintiff credit based on information from the credit bureaus, delinquent past or present credit obligations, and record of account(s) placed with a collection agency.**

66.     Answering Paragraph 66 of the Complaint, Synchrony lacks sufficient information or knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**67.     On or about February 14, 2022, Defendant called Plaintiffs physician and demanded a copy of every document signed by Plaintiff. Plaintiff's physician requested Plaintiff sign a medical release so that her physician could produce the demanded documents. Plaintiff signed said release.**

67.     Answering Paragraph 67 of the Complaint, Synchrony lacks sufficient information or knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**68.     On or about February 15, 2022, Plaintiff received a call from a merchant in Tennessee demanding that Plaintiff sign a Synchrony Bank credit card slip and provide it with a copy of her driver's license. Since Plaintiff had not made the charge, Plaintiff refused to sign anything.**

68.    Answering Paragraph 68 of the Complaint, Synchrony lacks sufficient information or knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**69.    On or about February 17, 2022, Plaintiff received the results of Defendant's alleged investigation into her January 25, 2022 dispute which Plaintiff sent to Trans Union. The SYNCB/Ebay inquiry was finally deleted from Plaintiffs Trans Union credit file. However, the investigation results were silent as to the other items Defendant was incorrectly reporting on Plaintiffs Trans Union credit report.**

69.    Answering Paragraph 69 of the Complaint, Synchrony lacks sufficient information or knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**70.    On or about March 3, 2022, Plaintiff pulled a copy of her Experian credit report. Defendant continued to negatively report the Lowe's account to Plaintiffs Experian credit report. Likewise, an inquiry from SyncB/JCPenney continued to appear on Plaintiffs Experian credit report.**

70.    Answering Paragraph 70 of the Complaint, the allegations refer to a written document that speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony denies the allegations.

**71.    On or about August 18, 2022, Plaintiff received a call from Credit Corp. claiming to be Defendant's legal department. Upon information and belief, "Credit Corp." is a debt collector to whom Defendant turned over the fraudulently used accounts.**

71.    Answering Paragraph 71 of the Complaint, Synchrony lacks sufficient information or knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**72.    On or about September 1, 2022, Defendant sent a collection letter to Plaintiff stating that the balance due on the Briggs & Stratton account was $8,580.50.**

72.    Answering Paragraph 72 of the Complaint, the allegations refer to a written document that speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony denies the allegations.

**73.    On or about September 21, 2022, Defendant sent Plaintiff a letter regarding the Care Credit account, stating that if Plaintiff paid $6,322.04, Defendant would waive the remaining balance. Plaintiff also received a statement on said account, same being the first statement Plaintiff had received in almost two years. The statement showed Defendant had added**

**$2,774.71 in interest in 2022 despite Plaintiffs numerous disputes informing Defendant that a third party had fraudulently used the Care Credit account, as well as her other accounts.**

73.     Answering Paragraph 73 of the Complaint, the allegations refer to a written document that speaks for itself. To the extent the allegations of this paragraph contradict the writing, Synchrony denies the allegations.

**74.     On January 10, 2023, Plaintiff filed a complaint with the South Carolina Department of Consumer Affairs relating to Defendant's conduct as set forth herein.**

74.     Answering Paragraph 74 of the Complaint, the allegations refer to a written document that speaks for itself. To the extent the allegations of this paragraph contradict the writing, Synchrony denies the allegations.

**75.     On or about January 30, 2023, approximately two years after Plaintiff first asserted that she had been the victim of identity theft and Defendant had wrongfully repossessed her tractor, Defendant provided Plaintiff with correspondence stating that it had not repossessed her tractor. This assertion was made despite Plaintiffs tractor having been taken after the actions of the identity thief causing Plaintiffs accounts with Defendant to become negative. Defendant further stated that it was unsure what account Plaintiff was stating lead to her tractor being repossessed, therefore, Defendant could not actually fully investigate Plaintiffs claim that Defendant had repossessed her tractor.**

75.     Answering Paragraph 75 of the Complaint, the allegations refer to a written document that speaks for itself. To the extent the allegations of this paragraph contradict the writing, Synchrony denies the allegations.

**76.     To date, Defendant continues to report fraudulently used derogatory accounts to Plaintiffs credit reports. Additionally, Defendant continues to seek collection on fraudulently used accounts in an amount in excess of $50.00.**

76.     Answering Paragraph 76 of the Complaint, Synchrony's investigation is ongoing and on that basis, Synchrony denies the allegations.

**77.     To date, Defendant has done no investigation into Plaintiffs fraud claims. Instead of complying with its statutory duties, Defendant has either not responded to Plaintiffs fraud claims or failed to perform any investigation upon same.**

77.     Answering Paragraph 77 of the Complaint, Synchrony's investigation is ongoing and on that basis, Synchrony denies the allegations.

## COUNT ONE -FAIR CREDIT REPORTING ACT

**78.     The Plaintiff adopts the averments and allegations of paragraphs 11 through 77 hereinbefore as if fully set forth herein.**

78.     Answering Paragraph 78 of the Complaint, Synchrony incorporates its responses to the preceding paragraphs as though set forth in full herein.

**79.     Defendant violated 15 U.S.C. §l681s-2(b) by failing to investigate the accuracy of the information reported by the Defendant to the consumer reporting agencies.**

79.     Answering Paragraph 79 of the Complaint, Synchrony's investigation is ongoing and on that basis, Synchrony denies the allegations.

**80.     On at least one occasion within the past two years, by example only and without limitation, Defendant violated 15 U.S.C. § l 68ls-2(b)(1)(A) by failing to fully and properly investigate after receiving notice that the Plaintiff disputed the information said Defendant had provided to a consumer reporting agency.**

80.     Answering Paragraph 80 of the Complaint, Synchrony's investigation is ongoing and on that basis, Synchrony denies the allegations.

**81.     On at least one occasion within the past two years, by example only and without limitation, Defendant violated 15 U.S.C. § l 68 ls-2(b)(I )(B) by failing to review all relevant information provided by the consumer reporting agencies.**

81.     Answering Paragraph 81 of the Complaint, Synchrony's investigation is ongoing and on that basis, Synchrony denies the allegations.

As a result of Defendant's violations of 15 U.S.C. §l681s-2(b)(l)(A) and (B), Plaintiff suffered actual damages, including but not limited to: damage to reputation and credit reputation, lost credit opportunities, denial of credit, embarrassment, humiliation, frustration, anxiety, loss of sleep, worry, physical sickness and pain, and mental anguish.

Answering Paragraph 82 of the Complaint, Synchrony's investigation is ongoing and on that basis, Synchrony denies the allegations.

**83.    The law in this District, the Fourth Circuit, and even nationally has long ago been articulated to require a detailed and searching investigation by a furnisher when it receives a consumer's FCRA dispute through a consumer reporting agency.**

83.    Answering Paragraph 83 of the Complaint, the allegations contain a conclusion of law to which no response is required.   To the extent a response is required, Synchrony refers all conclusions of law to the Court.

**84.    The violations by Defendant were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §168111. In the alternative, Defendant was negligent, entitling the Plaintiff to recovery under 15 U.S.C. §16810.**

84.    Answering Paragraph 84 of the Complaint, Synchrony's investigation is ongoing and on that basis, Synchrony denies the allegations.

Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorneys' fees from Defendant in an amount to be determined by a jury pursuant to 15 U.S.C. §168111 and §16810.

Answering Paragraph 85 of the Complaint, Synchrony's investigation is ongoing and on that basis, Synchrony denies that Plaintiff is entitled to any relief.

## COUNT TWO- FAIR CREDIT REPORTING ACT

**86.    The Plaintiff adopts the averments and allegations of paragraphs 11 through 85 hereinbefore as if fully set forth herein.**

86.    Answering Paragraph 86 of the Complaint, Synchrony incorporates its responses to the preceding paragraphs as though set forth in full herein.

**87.    On one or more occasions within the past two years, by example only and without limitation, Defendant violated 15 U.S.C. §1681s-2(b)(l)(C) and (D) by publishing the Defendant's inaccuracies within Plaintiffs credit files with the credit reporting agencies by failing to correctly report results of an accurate investigation to each credit reporting agency.**

87.     Answering Paragraph 87 of the Complaint, Synchrony's investigation is ongoing and on that basis, Synchrony denies the allegations.

**88.     Defendant violated 15 U.S.C. §1681s-2(b)(l)(C) by reporting inaccurate, incomplete, false, and misleading results of the investigation, if any, to at least one consumer reporting agency. This includes, but is not limited to, Defendant's failure to report the negative accounts set forth herein as disputed after receipt of a direct dispute from Plaintiff relating to same.**

88.     Answering Paragraph 88 of the Complaint, Synchrony's investigation is ongoing and on that basis, Synchrony denies the allegations.

**89.     Defendant violated 15 U.S.C. §1681s-2(b)(l)(D) by failing to notify all consumer reporting agencies that the reporting of the accounts the subject of this action was inaccurate, incomplete, false, and misleading.**

89.     Answering Paragraph 89 of the Complaint, Synchrony's investigation is ongoing and on that basis, Synchrony denies the allegations.

**90.     As a result of Defendant's violations of 15 U.S.C. §168ls-2(b)(l)(C) and (D), the Plaintiff suffered actual damages, including but not limited to: damage to her credit and credit reputation, lost credit opportunities, denial of credit, increased cost of credit, and incurred out of pocket losses. Additionally, Plaintiff suffered humiliation, anxiety, loss of sleep, frustration, worry, physical sickness and pain, and mental anguish, as well as damages for attorneys' fees.**

90.     Answering Paragraph 90 of the Complaint, Synchrony lacks sufficient information or knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**91.     The violations by Defendant were willful, rendering it liable for punitive damages in an amount to be determined by the jury pursuant to 15 U.S.C. §168 ln. In the alternative, Defendant was negligent, entitling the Plaintiff to recovery under 15 U.S.C. §1681o.**

91.     Answering Paragraph 91 of the Complaint, Synchrony's investigation is ongoing and on that basis, Synchrony denies the allegations.

**92.     The Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorneys' fees, pursuant to 15 U.S.C. §1681n and §1681o.**

92.     Answering Paragraph 92 of the Complaint, Synchrony's investigation is ongoing and on that basis, Synchrony denies Plaintiff is entitled to recover any damages.

## COUNT THREE - TRUTH-IN LENDING ACT

**93.    Plaintiff hereby adopts all of the allegations set forth in paragraphs 11 through 92 as if set forth fully herein.**

93.    Answering Paragraph 93 of the Complaint, Synchrony incorporates its responses to the

preceding paragraphs as though set forth in full herein.

**94.    The accounts described herein are each an accepted credit card as that term is defined by 15 U.S.C. §1602(111).**

94.    Answering Paragraph 94 of the Complaint, the allegations contain a conclusion of law to

which no response is required.  To the extent a response is required, Synchrony lacks sufficient

information or knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**95.    The transactions described herein were the result of unauthorized use of the credit cards that are the subject of this action as that term is defined by 15 U.S.C. §1602(p).**

95.    Answering Paragraph 95 of the Complaint, the allegations contain a conclusion of law to

which no response is required.  To the extent a response is required, Synchrony lacks sufficient

information or knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**96.    Plaintiff disputed the charges alleged herein both in writing and by way of telephone calls to Defendant. Said written disputes specifically set forth that Plaintiff had been the victim of identity theft. Plaintiff provided Defendant a copy of the police report she filed, a copy of her FTC Identity Theft Affidavit, and identified the accounts in question.**

96.    Answering Paragraph 96 of the Complaint, the allegations refer to a written document that

speaks for itself.  To the extent the allegations of this paragraph contradict the writing, Synchrony

denies the allegations.

**97.    In its purportedly reasonable investigation, to the extent same was performed, Defendant did not review the types or amounts of purchases made relating to Plaintiff's previous purchase pattern, review where said purchases were made, compare the signatures on the credit slips of the unauthorized purchases against authorized purchases, request documentation to assist in verification of Plaintiff's claim, request a written statement from Plaintiff to compare her signature with those on the disputed charges, or any other investigation.**

97.    Answering Paragraph 97 of the Complaint, Synchrony lacks sufficient information or knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**98.    Plaintiff received no benefit from the unauthorized use of her accounts**.

98.    Answering Paragraph 98 of the Complaint, Synchrony lacks sufficient information or knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**99.    The unauthorized charges described herein exceeded $50.00 and occurred after Plaintiff notified Defendant that the credit card described herein had been used by an unauthorized party. Specifically, the credit cards that are the subject of this action were in Plaintiff's name and were fraudulently used by a third party after Plaintiff was a victim of identity theft.**

99.    Answering Paragraph 99 of the Complaint, Synchrony lacks sufficient information or knowledge to admit or deny the allegations and, on that basis, denies the allegations.

100.    It is Defendant's burden to show that the use of Plaintiff's card was authorized. 15 U.S.C. §1643(b).

Answering Paragraph 100 of the Complaint, the allegations contain a conclusion of law to which no response is required.  To the extent a response is required, Synchrony lacks sufficient information or knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**101.     Defendant has failed to allege any facts or circumstances that support its assertion that Plaintiff authorized the fraudulent charges.**

101.    Answering Paragraph 101 of the Complaint, Synchrony lacks sufficient information or knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**102.    The Truth-in-Lending Act makes clear that Plaintiff is not responsible for any charges for the unauthorized use of a credit card in excess of $50.00.**

102.    Answering Paragraph 102 of the Complaint, the allegations contain a conclusion of law to which no response is required.  To the extent a response is required, Synchrony lacks sufficient information or knowledge to admit or deny the allegations and, on that basis, denies the allegations

**103.    Despite Plaintiff notifying Defendant that she was the victim of identity theft, Defendant reported balances in excess of $50.00 to the credit reporting agencies and charged off her accounts with balances in excess of $50.00.**

103.    Answering Paragraph 102 of the Complaint, the allegations refer to a written document that speaks for itself. To the extent the allegations of this paragraph contradict the writing, Synchrony denies the allegations.

**104.    The conduct of Defendant has also given rise to actual damages in the form of mental anguish and suffering, physical sickness, anxiety, worry, embarrassment, loss of sleep, frustration, and extreme emotional distress, for which Plaintiff seeks damages. Plaintiff also seeks twice the amount of the inaccurate finance charges suffered by her and all attorneys' fees and costs as set forth by 15 U.S.C. §1640.**

104.    Answering Paragraph 104 of the Complaint, Synchrony lacks sufficient information or knowledge to admit or deny the allegations and, on that basis, denies the allegations.

### COUNT FOUR- SOUTH CAROLINA CONSUMER PROTECTION CODE

**105.    Plaintiff hereby adopts all of the allegations set forth in paragraphs 11 through 104 as if set forth fully herein.**

105.    Answering Paragraph 105 of the Complaint, Synchrony incorporates its responses to the preceding paragraphs as though set forth in full herein.

**106.    The transaction described herein is a Consumer Credit Transaction as that term is defined by the South Carolina Consumer Protection Code. S.C. Code Ann. §37-1-201.**

106.    Answering Paragraph 106 of the Complaint, the allegations contain a conclusion of law to which no response is required. To the extent a response is required, Synchrony lacks sufficient information or knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**107.    Plaintiff is a Consumer as that term is defined by the South Carolina Consumer Protection Code. Id.**

107.    Answering Paragraph 107 of the Complaint, the allegations contain a conclusion of law to which no response is required. To the extent a response is required, Synchrony lacks sufficient information or knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**108.     Defendant violated S.C. Code Ann. §37-5-108(5)(b)(xi) by repossessing Plaintiffs property without first sending Plaintiff a Notice of Right to Cure.**

108.     Answering Paragraph 108 of the Complaint, Synchrony's investigation is ongoing and on

that basis, Synchrony denies the allegations

**109.     Due to Defendant's violation of the South Carolina Consumer Protection Code, Plaintiff has suffered mental anguish and suffering, physical sickness, anxiety, worry, embarrassment, loss of sleep, frustration, and extreme emotional distress, for which Plaintiff seeks damages. Plaintiff likewise seeks an award of statutory damages and attorneys' fees for Defendant's violation of that South Carolina Consumer Protection Code.**

109.     Answering Paragraph 109 of the Complaint, Synchrony's investigation is ongoing and on

that basis, Synchrony denies Plaintiff is entitled to recover any damages.

## COUNT FIVE - DEFAMATION- LIBEL

**110.     Plaintiff hereby adopts all of the allegations set forth in paragraphs 11 through 109 as if set forth fully herein.**

110.     Answering Paragraph 110 of the Complaint, Synchrony incorporates its responses to the

preceding paragraphs as though set forth in full herein.

**111.     Defendant made false statements about Plaintiff. Specifically, Defendant sought collection of accounts which a third party had fraudulently used, a fact that Defendant knew, or should have known.**

111.     Answering Paragraph 111 of the Complaint, Synchrony's investigation is ongoing and on

that basis, Synchrony denies Plaintiff is entitled to recover any damages.

**112.     Defendant published the false information to a third party, specifically, third party debt collectors, who used this information to attempt to collect money from Plaintiff on debts that a third party had fraudulently incurred.**

112.     Answering Paragraph 112 of the Complaint, Synchrony's investigation is ongoing and on

that basis, Synchrony denies Plaintiff is entitled to recover any damages.

**113.     Defendant was at fault for the making of this statement. Defendant was aware as to Plaintiff's fraud allegations and referred the accounts despite this knowledge. Likewise, Defendant did not inform these third-party debt collectors that Plaintiff disputed the accounts as fraudulently used.**

113.    Answering Paragraph 113 of the Complaint, Synchrony's investigation is ongoing and on that basis, Synchrony denies Plaintiff is entitled to recover any damages.

**114.    Plaintiff has suffered harm due to the actions of Defendant. This harm includes, but is not limited to, continued collection attempts, constant harassment from debt collectors, damage to her reputation, mental anguish and suffering, physical sickness, anxiety, worry, embarrassment, loss of sleep, frustration, and extreme emotional distress, for which Plaintiff seeks damages.**

114.    Answering Paragraph 114 of the Complaint, Synchrony lacks sufficient information or knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**115.    As Defendant's conduct was willful, Plaintiff seeks an award of punitive damages to deter similar future conduct.**

115.    Answering Paragraph 115 of the Complaint, Synchrony's investigation is ongoing and on that basis, Synchrony denies Plaintiff is entitled to recover any damages.

## COUNT SIX- CONVERSION

**116.    Plaintiff hereby adopts all of the allegations set forth in paragraphs 11 through 115 as if set forth fully herein.**

116.    Answering Paragraph 116 of the Complaint, Synchrony incorporates its responses to the preceding paragraphs as though set forth in full herein.

**117.    Plaintiff was the possessor and owner of her tractor.**

117.    Answering Paragraph 117 of the Complaint, the allegations contain a conclusion of law to which no response is required.  To the extent a response is required, Synchrony lacks sufficient information or knowledge to admit or deny the allegations and, on that basis, denies the allegations

**118.    Defendant took Plaintiffs tractor for its own benefit.**

118.    Answering Paragraph 118 of the Complaint, Synchrony lacks sufficient information or knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**119.    Prior to taking of the tractor, Defendant failed to provide a Notice of Right to Cme required by the South Carolina Protection Code. S.C. Code Ann. §37-5-111.**

119.    Answering Paragraph 119 of the Complaint, the allegations contain a conclusion of law to which no response is required.  To the extent a response is required, Synchrony lacks sufficient information or knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**120.    Defendant's taking of Plaintiffs tractor prior to providing a Notice of Right to cure amounts to a conversion of her property. S.C. Code Ann. §37-5-111(7).**

120.    Answering Paragraph 120 of the Complaint, Synchrony's investigation is ongoing and on that basis, Synchrony denies the allegations

**121.    Plaintiff has requested the return of her property and Defendant has refused to return same.**

121.    Answering Paragraph 121 of the Complaint, Synchrony lacks sufficient information or knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**122.    Upon information and belief, Defendant has sold or otherwise transferred Plaintiffs property and same is no longer available to Plaintiff.**

122.    Answering Paragraph 122 of the Complaint, Synchrony lacks sufficient information or knowledge to admit or deny the allegations and, on that basis, denies the allegations.

**123.    Due to Defendant's conversion, Plaintiff is entitled to the value of the converted property. Plaintiff also seeks punitive damages due to Defendant's conversion of her property.**

123.    Answering Paragraph 123 of the Complaint, Synchrony's investigation is ongoing and on that basis, Synchrony denies Plaintiff is entitled to recover any damages.

124.    PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:**
**A.    Actual and statutory damages from Defendant pursuant to 15 U.S.C. §l68ln(a)(l)(A) and/or 15 U.S.C. §168lo(a)(I);**
**B.    Punitive damages from Defendant pursuant to 15 U.S.C. §l68ln(a)(2);**
**C.    Costs and reasonable attorneys' fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §l681o(a)(2);**
**D.    Actual and statutory damages due to Defendant's violations of 15 U.S.C. §1643;**

– 29 –

    **E.**      **Reimbursement of double the improper finance charges charged to Plaintiff pursuant to 15 U.S.C. §1640;**

    **F.**      **Attorneys' fees and costs pursuant to 15 U.S.C. §1640;**

    **G.**      **Actual damages, statutory damages, and attorneys' fees and costs due to Defendant's violations ofS.C. Code Ann. §37-5-108;**

    **H.**      **Actual, compensatory, and ptmitive damages for Defendant's violations of South Carolina common law as set forth herein; and**

    **I.**      **For such other and further relief as the Court may deem just and proper**

Answering the Prayer for Relief, Synchrony denies that the demanded relief should be awarded.

## DEFENSES

Synchrony hereby alleges the following separate and distinct defenses without conceding that Synchrony necessarily bears the burden of proof or persuasion.

    i.  The Complaint fails to allege facts sufficient to state any cause of action upon which relief can be granted.

    ii.  The claims are barred by the doctrines of waiver, laches, estoppel, and/or unclean hands.

    iii.  The claims are barred by the applicable statute of limitations.

    iv.  The claims are barred by the doctrines of res judicata and/or collateral estoppel.

    v.  The actions allegedly undertaken by Synchrony were justified and/or privileged.

    vi.  Salyer suffered no actual damages and any damages claimed by Salyer in the Complaint are speculative and cannot be recovered.

    vii.  The claims fail or are barred, in whole or in part, because Salyer did not suffer any injury or damages by reason of the alleged acts or omissions set forth in the Complaint.

viii.   The Complaint and each claim set forth therein are barred because the conduct of Synchrony was undertaken in good faith and was compliant with all applicable laws, regulations and industry standards.

ix.   Any alleged acts or omissions that gave rise to the claims are the result of innocent mistake and/or bona fide error.

x.   If Salyer suffered or sustained any loss, injury, damage, or detriment, the same was directly and proximately caused and contributed to by the breach, conduct, acts, omissions, activities, carelessness, recklessness, negligence, and/or intentional misconduct of Salyer or third parties, and not Synchrony.

xi.   Synchrony, at all times, acted in good faith and in accordance with reasonable commercial standards to protect its economic interest, thus precluding any recovery by Salyer.

xii.   The parties have a duty to arbitrate and some or all of Plaintiff's claims may be subject to arbitration

xiii.   Synchrony has insufficient knowledge or information on which to form a belief as to the existence of additional, as yet unstated, affirmative defenses. Synchrony therefore reserves the right to assert additional affirmative defenses and to amend this Answer accordingly in the event discovery and ongoing litigation indicates that amendment may be appropriate.

WHEREFORE, Synchrony prays:

1.   That Salyer take nothing by way of the Complaint;

2.   That Synchrony be awarded its costs of suit incurred herein;

3. That Synchrony be awarded attorneys' fees to the extent provided by law;

4. That judgment be entered in favor of Synchrony and against Salyer; and

5. That Synchrony be granted such other relief as the Court deems just and proper.

DATED this the 27th day of April 2023.

Respectfully submitted,

 s/Adam C Bach
Adam C. Bach (Fed. Bar #09877)
Zachary A. Turner (Fed. Bar #13841)
TONNSEN BACH, LLC
1306 S. Church Street
Greenville, SC  29605
P:  (864) 236-5013
F:  (864) 312-4191
*abach@tonnsenbach.com*
*zturner@tonnsenbach.com*

*Attorneys for Defendant Synchrony Bank*

Greenville, South Carolina